UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PHILLIP CORBETT,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORP.<br><br>　　　　　Defendant. | Civil Action No. _____ |

## COMPLAINT

1.  Plaintiff Phillip Corbett worked for Defendant International Business Machines Corporation (hereinafter "IBM"). He previously opted in to a collective action, <u>Rusis et al. v. International Business Machines Corp.</u>, C.A. No. 18-cv-08434 (S.D.N.Y.), that alleged that IBM discriminated against older workers in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, in connection with the termination of their employment. By opting in to that collective action, his claim was timely under the ADEA, pursuant to the single filing, or "piggybacking", rule that allows plaintiffs in discrimination cases to refer to earlier classwide administrative charges of discrimination for statute of limitations purposes. However, Plaintiff signed an arbitration agreement with IBM, and IBM has taken the position that its arbitration agreement does not allow for the "piggybacking" rule, which IBM contends would preclude Plaintiff from pursuing his claim under the ADEA in arbitration. IBM's arbitration agreement also contains a confidentiality clause, which

1

IBM has sought to enforce strictly, which would undermine the ability of employees, such as Plaintiff here, from enforcing their rights under anti-discrimination statutes.

2. Plaintiff thus seeks a declaration in this action that these provisions of IBM's arbitration agreement are unenforceable. This action is brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

## II. PARTIES

3. Plaintiff Phillip Corbett resides in Greenville, South Carolina. Plaintiff was formerly employed by IBM and has attempted to bring a claim of age discrimination against IBM under the ADEA.

4. Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is a multinational technology company that offers services and goods ranging from computing, cloud platforms, advanced analytics tools, and others.

## III. JURISDICTION AND VENUE

5. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff has brought a claim pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2202 that is of sufficient immediacy and reality to warrant declaratory relief. This action concerns whether Plaintiff may arbitrate a federal claim under the ADEA and whether certain provisions of Defendant's arbitration provision are enforceable. Jurisdiction is therefore proper under 28 U.S.C. § 1331.

6.     The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

## IV. STATEMENT OF FACTS

7.     Plaintiff worked for IBM for approximately 20 years until his layoff in 2019 at the age of 51.  He worked for IBM as a Content Analytics Manager.

8.     Plaintiff contends that he fell victim to a years-long companywide discriminatory scheme implemented by IBM's top management to build a younger workforce, by reducing its population of older workers in order to make room for the hiring of younger workers.

9.     This discriminatory scheme is detailed in the Second Amended Complaint in the matter of <u>Rusis et al. v. International Business Machines Corp.</u>, C.A. No. 18-cv-08434 (S.D.N.Y.) (Dkt. 179), a class and collective action pending in this district, brought under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*.  Briefly stated, in <u>Rusis</u>, the plaintiffs allege that IBM has pushed out thousands of older workers over a several year period, while hiring younger workers (which the company often refers to as "Early Professional Hires" or "New Collar" workers), in order to better compete with newer technology companies, such as Google, Facebook, Amazon, and others.

10.    Indeed, IBM has been investigated for age discrimination by the Equal Employment Opportunity Commission ("EEOC").  Following a multi-year investigation, on August 31, 2020, the EEOC issued a classwide determination in which it found reasonable cause to believe that IBM discriminated against older employees during the

period 2013 to 2018.  In its determination letter, the EEOC noted that it had uncovered "top-down messaging from IBM's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." The EEOC revealed that it had analyzed data from across the company and that it was primarily older workers (more than 85%) who were in the total potential pool of those employees considered for layoff. The EEOC stated in its determination letter that its conclusion was supported by dozens of interviews it had conducted across the company, as well as analysis of data, and it rejected IBM's attempt to justify and defend the layoffs of the 58 charging parties, whose claims had been consolidated for investigation, through individualized explanations.

11.     When it laid off employees, IBM avoided providing disclosures of the ages of employees who had been laid off and those not laid off (and other related information), as required by the Older Workers' Benefits Protections Act ("OWBPA"), 29 U.S.C. § 626(f)(1)(H), by not including a waiver of ADEA claims in the release that it asked the employees to sign.  Instead, it offered the employees subject to layoff a very modest severance payment in exchange for a waiver of almost all legal claims, other than a claim under the ADEA.  The agreement provided, however, that if the employee chose to pursue a claim under the ADEA, it would need to be in individual arbitration.

12.     Plaintiff signed this arbitration agreement.

13.     The arbitration agreement includes a provision that states: "To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which

must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration."

14. The arbitration agreement also states: "Any issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction."

15. Plaintiff contends that, to the extent the provision waives the "piggybacking" rule (as IBM has argued), such a waiver is an improper waiver of substantive rights and is thus unenforceable. However, as IBM itself has argued, pursuant to the provision cited in paragraph 14 above, only a court could declare this provision unenforceable.

16. Because the arbitration agreement delegates questions of validity or enforceability of its terms to a court rather than an arbitrator, Plaintiff opted in to the Rusis matter in order to challenge the enforceability of the provision described in paragraph 13 above, which IBM contends prevents Plaintiff from pursuing a claim of discrimination under the ADEA.[1]

17. The Rusis court held, however, that it could not address the validity of this provision, in that case, with respect to Plaintiff (and others who argued that the provision is unenforceable) because IBM's agreement prohibits the employees from joining a

---

[1] Plaintiff's age discrimination claim would have been timely, had he been permitted to participate in the Rusis action, under the piggybacking doctrine.

class or collective action.  The court made clear that any such challenge must be made on an individual basis. (<u>Rusis</u> Dkt. 156 at pp. 8-15.)  Plaintiff was thereafter dismissed from the <u>Rusis</u> matter. (<u>Rusis</u> Dkt. 165.)

18.     Plaintiff therefore challenges here, in this individual action, the provision of IBM's arbitration agreement quoted in paragraph 13, as unenforceable.

19.     Pursuant to the ADEA, individuals are required to file a charge with the EEOC within 300 days of the date of the alleged wrongful act (or within 180 days in non-deferral jurisdictions). 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d), 633(b).

20.     However, under the single filing rule, also referred to as the "piggybacking" doctrine, individuals may pursue discrimination claims even if they did not timely file their own administrative charge of discrimination at the EEOC.  See <u>Tolliver v. Xerox Corp.</u>, 918 F.2d 1052, 1057-59 (2d Cir. 1990); see also <u>Holowecki v. Federal Exp. Corp.</u>, 440 F.3d 558, 565-70 (2d Cir. 2006).  All that is required for "piggybacking" is that the earlier filed charge of discrimination is similar to the discrimination claim that the individual wants to pursue. See <u>Tolliver</u>, 918 F.2d at 1057-59. The single filing rule is thus a part of the statute of limitations law for ADEA claims.

21.     Although Plaintiff would be timely to bring his age discrimination claim in court under the single filing rule by virtue of piggybacking onto similar charges timely filed at the EEOC (as Plaintiff attempted to do by opting in to the <u>Rusis</u> case), <u>see Tolliver</u>, 918 F.2d at 1057-59; <u>Holowecki</u>, 44 F.3d at 565-70, IBM's arbitration agreement purports to render Plaintiff's ADEA claim untimely if he were to file it in arbitration, in that it states that "[t]he filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not

substitute for or extend the time for submitting a demand for arbitration." Thus, IBM's enforcement of this provision would effectively waive Plaintiff's right to rely on the single filing rule and thus significantly truncates Plaintiff's ADEA limitations period.

22. Courts do not permit employers to truncate the limitations periods of ADEA claims by contract because the ADEA limitations period is a substantive, non-waivable right.[2] See Thompson v. Fresh Products, LLC, 985 F.3d 509, 519-20 (6th Cir. 2021). The EEOC has also taken the position that ADEA limitations periods cannot be abridged by contract. See Thompson, EEOC Brief, 2020 WL 1160190, at *19-25 (S.D.N.Y. March 2, 2020).

23. Moreover, the law is clear that arbitration is a viable alternative to court only where employees can pursue the same claims they could pursue in court; the law is also clear that employees cannot be required to give up substantive rights if they proceed with their claims in arbitration, rather than in court. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) ("the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum").

24. IBM's arbitration agreement also includes a confidentiality provision. IBM has aggressively used this confidentiality provision in order to attempt to block employees who are pursuing their claims in arbitration from using information and rulings obtained in cases by other employees pursuing similar claims, which also

---

[2] As noted above (paragraph 11), Plaintiff cannot be deemed to have waived his rights under the ADEA because IBM did not provide the disclosures regarding the ages of employees who were laid off and were not laid off, as required by the OWBPA. See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998).

7

challenge the same general practice IBM has engaged in to build a younger workforce by forcing out many older employees.

25. This confidentiality provision is unconscionable and unenforceable because it unduly hinders employees, such as Plaintiff, from advancing their claims under the ADEA, particularly in such a case that relies heavily on pattern and practice evidence. Numerous courts have limited the operation of confidentiality provisions in arbitration as "secrecy provisions of the arbitration agreements [that] both affect the outcomes of individual arbitrations and clearly favor Defendants." Schnuerle v. Insights Communications Co., 376 S.W.3d 561, 579 (Ky. 2012) (quoting Acorn v. Household Intern., Inc., 211 F. Supp. 2d 1160, 1173 (N.D. Cal. 2002)). Courts have stricken confidentiality provisions in arbitration agreements since they give the defendant an "obvious informational advantage." Larsen v. Citibank FSB, 871 F.3d 1295, 1319 (11th Cir. 2017).[3]

---

[3] See also McKee v. AT&T Corp., 164 Wash.2d 372, 398 (2008) (striking a confidentiality provision where the arbitration claimants "are prevented from sharing discovery, fact patterns, or even work product, such as briefing, forcing them to reinvent the wheel in each and every claim, no matter how similar."); Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1, 42 (Ill. 2006) (finding that confidentiality provisions may be unconscionable when coupled with class action waivers, because such provisions prevent "the claimant [and] her attorney [from] shar[ing] [] information with other potential claimants."); Zuver v. Airtouch Communications, Inc., 153 Wn.2d 293, 299 (Wash. 2004) (finding an arbitration confidentiality provision unconscionable and unenforceable, concluding that "[a]s written, the provision hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations"; "keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process, and thus potentially discourages that employee from pursuing a valid discrimination claim."); Ting v. AT&T, 319 F.3d 1126, 1152 (9th Cir. 2003) (recognizing that confidentiality provisions in arbitration agreements hamper ability of claimants to "obtain[] the information needed to build a case"; DeGraff v. Perkins Coie, 2012 WL 3074982, at *4 (N.D. Cal. July 30 2012)

26.    In arbitration, Plaintiff will likewise be prevented by IBM's confidentiality provision from benefiting from decisions obtained in other similar arbitrations and sharing discovery with other arbitration claimants who are pursuing this same claim against IBM. Because of this one-sidedness, Plaintiff will be severely hampered, if not fully prevented, from obtaining relief under the ADEA in arbitration.

## COUNT I

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02

An actual controversy of sufficient immediacy exists between the parties as to whether certain provisions within IBM's arbitration agreement, which severely undermine or extinguish Plaintiff's ability to pursue a claim under the ADEA, are enforceable. In particular, Plaintiff seeks a declaratory judgment from this Court that the timing provision in IBM's arbitration agreement that purports to waive the single filing, or "piggybacking", rule is unenforceable. Plaintiff also seeks a declaratory judgment that the confidentiality provision in IBM's arbitration agreement is unenforceable.

---

(severing confidentiality provision); <u>Bragg v. Linden Research, Inc</u>., 487 F.Supp. 2d 59 (E.D. Pa. 2007) (finding a confidentiality clause within an arbitration agreement to be unconscionable because it allows a company to "place[] itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent" and "[t]he unavailability of arbitral decisions could also prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct against a company.").

9

Case 1:21-cv-06380-JMF   Document 1   Filed 07/27/21   Page 10 of 10

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1.    Find and declare that the provision of IBM's arbitration agreement that purports to waive the single filing, or "piggybacking", rule, and under which IBM contends that Plaintiff's claim under the ADEA is untimely, is unenforceable and otherwise void.

2.    Find and declare that the provision of IBM's arbitration agreement that purports to require arbitration proceedings to enforce the ADEA to be fully confidential is unenforceable and otherwise void.

3.    Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

PHILLIP CORBETT,

By his attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (NY Bar No. 2971927)
Zachary Rubin (NY Bar No. 5442025)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com, zrubin@llrlaw.com

Dated:    July 27, 2021

10